# THOMAS E. MELVIN *et al.*

*v.*

# CHARLES D. HODGES.

1. PROMISSORY NOTE—*proof of the execution of, when put in issue.* It is not essential, when the execution of a note is put in issue, to prove its execution by an eye-witness.

2. By delivering a promissory note, with his signature to it, a party adopts the signature, and is bound by it, whether written by himself or not, and proof of such a state of facts is sufficient foundation for the introduction of the note in evidence, when the execution of it has been put in issue by plea verified by affidavit.

3. SIGNATURE—*comparison of, with another, when permitted.* Whilst the genuineness of a signature can not be proved by comparing it with another signature, admitted to be genuine, yet, where a witness testified

that he was acquainted with the defendant's handwriting when young; that he had been absent from him for eighteen years, but had seen him write during the last four years, and that he would not take the signature in dispute to be his, it was proper, on cross-examination, for the purpose of testing the accuracy of the witness' observation and memory, to show him the signature to the plea putting the execution of the note in issue, about the genuineness of which there was no question, and ask him whether it was the genuine signature of the defendant. This would not be proving a signature, but would enable the witness to determine how reliable and accurate was the impression of the defendant's signature, as fixed in his memory, with a view to confirming or modifying his previously expressed opinion in regard to the signature in controversy.

APPEAL from the Circuit Court of Greene county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. KNAPP & BRIGGS, for the appellants.

Messrs. HODGES & BURR, and Messrs. WOODSON & WITHERS, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of assumpsit, brought by Charles D. Hodges against Thomas E. Melvin and Henry Rainey. in the Greene circuit court, to recover the amount claimed to be due on a certain promissory note. The defendant Melvin was alone served with process. He pleaded *non assumpsit.* verified by his affidavit. The jury, upon the trial of the case, rendered a verdict in favor of Hodges for the amount of the note and accruing interest. Melvin moved for a new trial. which the court overruled. The defendant Rainey then entered his appearance, and consented that judgment should go against himself jointly with Melvin, for the amount found to be due by the verdict of the jury. The court thereupon gave judgment against the defendants for this amount. The defendant Melvin took several exceptions to the rulings of the court, during the progress of the trial, and brings the case here by appeal.

It is insisted that the court erred in permitting the note to be read in evidence to the jury, for the reason that its execution was not sufficiently proved.

The plaintiff, Hodges, testified that, in February, 1863, the defendant Rainey applied to him to borrow $500, and offered to give the defendant Melvin as security. He wrote the note and handed it to Rainey for his and Melvin's signatures. Rainey took the note, went away with it, and, in a few days, returned it with the defendants' signatures attached, delivered it to the plaintiff, and received the $500. Rainey testified, corroborating Hodges as to his application to him to borrow the $500, the writing of the note by Hodges, and his taking it for the purpose of getting the defendants' signatures; and also, that he went to the house of Melvin, and asked him to sign the note; that Melvin hesitated; said that he had pretty much quit going security; that his wife did not like it; but that, after hesitating awhile, Melvin took the note, went into another room and soon returned, and handed him the note, with his signature annexed; witness remarked that his signature was badly written, to which Melvin replied, "it is good enough."

One Rains testified that he was step-son of Rainey; that he had a conversation with Melvin in the fall of 1863, at Rainey's house; Melvin then said he was only on one note, and that was to Charles D. Hodges, as security for Rainey.

We are unable to perceive why this evidence did not lay a sufficient foundation for the introduction of the note in evidence. It was not essential that it should have been proved by an eye-witness that Melvin signed the note. By delivering the note with his signature affixed to it, he adopted the signature and bound himself by it, whether it was written by himself or some one else. *Walters* v. *Trustees of Schools*, 12 Ill. 64.

It is contended, also, that the court erred in permitting the plaintiff to have the witness, M. Borin, for the purpose of his cross-examination, to examine Melvin's signature to the

plea, to test his knowledge of Melvin's handwriting, and *Kervin* v. *Hill*, 37 Ill. 209, is referred to in support of the objection.

In that case, experts were called by the plaintiff, to whom were shown the signatures to certain affidavits made by the plaintiff, and on file in the cause, and they were asked and permitted to state, against the defendants' objection, whether the signatures to the affidavits and notes sued on were made by the same person. That was held to be error, the court, per Mr. JUSTICE LAWRENCE, saying: "Whatever we might be inclined to hold, were the question before us for the first time, it must be considered the law of this State, that the genuineness of a signature can not be proved by comparing it with another signature admitted to be genuine."

The present case, however, is quite different. The witness had testified, on his direct examination, that he was well acquainted with Melvin; that he had gone to school with him in Tennessee; had seen him write often; was well acquainted with his writing when young; was absent from him for eighteen years; had known him and seen him write during the last four years, and would not take the signature to the note to be his handwriting.

The signature to the plea was not in controversy, nor was its genuineness questioned. The object in having the witness to examine this signature, was not to prove a signature by comparison, but to test the accuracy of the witness' memory. Had there been any question as to the genuineness of the signature to the plea, it would certainly not have been competent to have asked the witness whether it was Melvin's signature or not, with a view of contradicting him, as that would have raised a collateral issue, entirely irrelevant to the case. But the signature being admitted, no such issue could be raised; and the only effect the examination could have, would be to enable the witness to determine how accurate and reliable was the impression of Melvin's signature, as fixed in his memory, with the view of confirming or mod-

ifying his previously expressed opinion in regard to the signature in controversy. It is essential to justice that a considerable degree of latitude be allowed in the cross-examination of witnesses for the purpose of testing the accuracy and fairness of their evidence. "By means of cross-examination," says Prof. Greenleaf, in his work on Evidence, (Vol. 1, § 446.) "the situation of the witness, with respect to the parties and to the subject of litigation, his interest, his motives. his inclination and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory and description, are all fully investigated and ascertained."

We are of opinion that the ruling of the court was correct. The examination of the signature could not prejudice Melvin, and it was proper, as a basis for testing the accuracy of the witness' observation and memory. *Adams* v. *Field*, 21 Vt. 256 ; *Hopkins* v. *Megquire*, 25 Maine, 78 ; *Streetzer* v. *Lowell*, 33 id. 446 ; *Stone* v. *Hubbard*, 7 Cushing, 595 ; 5 id. 295 ; 19 Ohio, 426.

The remaining objection urged is, that the verdict is contrary to the evidence. We can know nothing of the social position occupied by these witnesses, nor of their deportment and appearance while on the witness stand. Our knowledge in this respect is limited to the facts testified to by them, as incorporated in the record before us. Unless these facts clearly preponderate against the plaintiff, it is our duty to not disturb the verdict. We do not think they do. The preponderance of the evidence is, in our opinion, in favor of the plaintiff.

We perceive no substantial error in the instructions.

The judgment is affirmed. .

*Judgment affirmed.*