George B. Stitzel et al., Appellees, v. Loren B. Miller, Adm'r., Appellant.

## Gen. No. 5327.

1. NEGOTIABLE INSTRUMENTS—*endorsee's right of action in his own name.*  If an instrument is negotiable, its endorsement by the payee accompanied by delivery so as to pass the legal title to the endorsee entitles him to maintain an action thereon in his own name.

2. NEGOTIABLE INSTRUMENTS—*what does not destroy negotiability.* *Held,* that the following clause did not operate to destroy the negotiability of the instrument in question: "We also agree that in case said note is not paid at maturity that it is at the option of the holder hereof to extend as he deems proper the payment of the above note, and that said extension shall not in any manner release one or either of us from the payment hereof."

3. NEGOTIABLE INSTRUMENTS—*when action may be brought prior to maturity.*  If the action upon a note is against the administrator of the deceased maker it may be commenced prior to maturity (so held as a matter of first impression).

4. NEGOTIABLE INSTRUMENTS—*what prima facie establishes delivery.* Possession by one claiming to own a note is *prima facie* evidence that it had been duly delivered to him.

5. Suits—*what commencement of action.* The filing of a *praecipe* and the issuance of the first summons is the commencement of an action at law.

6. Suits—*when premature commencement waived.* If an action is brought upon a promissory note before its maturity the point is not preserved for review if after demurrer raising such question a plea of *non assumpsit* is filed and thereafter the trial had and the note received in evidence without objection being made thereto upon the ground that it had not matured at the time the action was instituted. Such objection must be made at the trial otherwise than by instructions.

7. Administration of estates—*what remedy concurrent with right to file claim.* The holder of a claim against a deceased person is not required to proceed in the county court but may bring an original suit against the executor in the circuit court.

8. Evidence—*how question of genuineness of signature cannot be determined.* The genuineness or falsity of a handwriting or signature cannot be proved by comparison with other admittedly genuine handwriting or signatures unless said other handwriting or signatures are in evidence in the case for some other legitimate purpose, or at least are among the files of the case and a part of the record. (So held from the testimony where the comparison had been made by an expert.)

9. Evidence—*effect of admissions by one heir at law.* The silence or admission of one heir at law is not competent to bind his co-heirs, he not being the administrator of the estate in question and no express agency being shown.

10. Evidence—*when non-production does not justify unfavorable inference.* The failure to produce a witness who if called would have been incompetent by virtue of interest does not justify any unfavorable inferences.

11. Instructions—*must not submit questions of law.* An instruction is properly refused which leaves the jury to determine what evidence is competent.

Assumpsit. Appeal from the Circuit Court of Lee county; the Hon. R. S. Farrand, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed October 18, 1910.

Trusdell, Smith & Leech, for appellant.

H. A. Brooks, for appellees.

Mr. Justice Dibell delivered the opinion of the court.

On December 18, 1908, George B. Stitzel and C. C. Brooks, the appellees, brought this suit against Loren B. Miller, ad

ministrator of the estate of D. C. Miller, deceased, the appellant, upon a promissory note purporting to be signed by said D. C. Miller, dated February 2, 1908, and payable one year after date to the order of Harrison Miller and by him endorsed in blank and sold and delivered to appellees, which note was for the principal sum of $6,500, with interest at the rate of six per cent per annum. Appellant obtained an order of the court below impounding the note, and thereafter filed a special demurrer which prayed *oyer* and set out the instrument sued on. The demurrer was overruled and appellant then filed a plea of *non assumpsit,* with his affidavit attached that to the best of his knowledge, information and belief, the signature of the deceased to said note was not his genuine signature and that the plea of *non assumpsit* was true. Upon a jury trial appellees had a verdict for $7,140.25. Motions by appellant for a new trial and in arrest of judgment were denied and appellees had a judgment upon the verdict, to be paid in due course of administration, and from that judgment the administrator prosecutes this appeal. He contends: (1) that the instrument sued upon is not negotiable and therefore appellees have no title upon which they can recover in their own names; (2) that the suit was prematurely begun and therefore appellees cannot have judgment; (3) that the court erred in refusing to admit competent evidence offered by appellant tending to show that the signature to this instrument was not the genuine signature of D. C. Miller, deceased; (4) that the court erred in admitting proof of the conduct of the administrator and of one out of nine heirs at law of deceased; (5) that the court erred in refusing certain instructions requested by appellant.

The endorsement of the name of the payee on the back of this instrument and its sale and delivery by him to appellees, made them the legal owners thereof and authorized them to maintain an action at law upon it in their own names, if it was negotiable. Kistner v. Peters, 223 Ill. 607; Keenan v. Blue, 240 Ill. 177. Appellees have caused the original instrument and certain other instruments hereafter mentioned to be certified to this court. The original instrument sued

on is therefore before us. It is evident that the parties used a printed blank prepared by and for the Stocking Trust & Savings Bank, and everything is in print except the date, names, amount, time when payable and rate of interest. The first part is printed in large type and is an ordinary promissory note. Thereafter follows in fine print a power of attorney to confess judgment upon the note. Then follows in fine print the following words: "We also agree that in case said note is not paid at maturity that it is at the option of the holder hereof to extend as he deems proper the payment of the above note, and that said extension shall not in any manner release one or either of us from the payment hereof." It is contended that these words make the instrument non-negotiable. The question seems not to have been expressly decided in Illinois, but outside of Illinois in some jurisdictions those or similar words are held to destroy the negotiability of the instrument, and in others like words are held not to have that effect. The Negotiable Instrument law of 1907 requires that to make an instrument payable in money negotiable it must be payable on demand or at a fixed or determined future time. Such also was the law before the adoption of that Act. It is contended that the words above quoted from the instrument sued on give the holder the option to extend the note as he pleases, and that it cannot be known what extension or extensions he may grant, and therefore the time when the note will become payable is uncertain and cannot be determined, and therefore the note is not negotiable. We conclude that the principle laid down in Dorsey v. Wolff, 142 Ill. 589, is applicable here. It will be observed that the note is dated February 2, 1908, and that the first part of the note makes it expressly due one year after date, and that the clause above quoted does not give the holder an option if the note is paid at maturity. It is only in case the payee fails to perform his contract and pay at maturity that an option arises in the holder to extend the time. In Dorsey v. Wolff, *supra,* the notes there sued on by an endorsee against the maker contained a provision for the payment of a certain percentage as attorney fees if the notes were not paid when

due, and it was contended that this provision made the notes non-negotiable and therefore the endorsee had no right to bring suit in his own name on the notes. The court said that the promise to pay the attorney fees was a promise to do something after the note matured; that it did not affect the character of the note before or up to the time of its maturity; that the stipulation could not affect the negotiability of the note because the negotiability of the note for all practicable purposes is at an end when it matures; that commercial paper is expected to be paid promptly when it is due; that this stipulation could have no force except on the maker's default; that if the maker kept his contract by paying his note at maturity no element of uncertainty entered into the contract, and that the notes in question were negotiable notwithstanding the stipulation. Numerous authorities from this and other states are there cited, holding in various forms that that which only produces uncertainty after the note fails to be paid at maturity does not destroy its negotiability. Following and applying the rule there laid down, we conclude that in this suit the clause above stated does not destroy the negotiability of the note.

The note was due on February 22, 1909. The suit was begun on December 18, 1908. The first summons was not served. A second summons was issued on January 23, 1909, and served on March 10, 1909. The filing of the *praecipe* and the issue of the first summons were the commencement of this action at law. C. & N. W. Ry Co. v. Jenkins, 103 Ill. 588; Schroeder v. M. & M. Ins. Co., 104 Ill. 71; M. M. Ins. Co. v. Schallman, 188 Ill. 213; 1 Enc. L. & P. 1082; 1 Encyc. of Pl. & Pr. 124. Therefore the suit was begun before the maturity of the note by its face, even though the summons was not served till after that time. In an ordinary action at law a plaintiff cannot recover for money not due when the suit was begun and that defense can be made under the plea of *non assumpsit,* unless its non-maturity is the result of an agreement extending the original time for payment. If then this was an ordinary action at law, and if the question is properly preserved for review, the judgment cannot stand.

We are disposed to consider this defense unavailable here for two reasons: First. We doubt if the question is properly preserved for review. In appellant's special demurrer, after craving *oyer* and setting out the instrument, one of the grounds of the demurrer was that the note was not due when the suit was begun, and another was that the cause of action had not accrued to the plaintiffs when the suit was begun. That demurrer was overruled. If appellant had abided by it the question would have been thereby preserved for review. But appellant thereafter filed a plea of *non assumpsit* and thereby waived the demurrer. C. & A. R. R. Co. v. Clausen, 173 Ill. 100. When the note was finally offered in evidence no such objection was made to its introduction. The only objection contained in the record is "the general objection, the want of sufficient proof." That objection did not raise the question here under discussion, but in effect waived the objection that it appeared from the face of the note that it had not matured when the suit was begun. The court refused instruction No. 5, requested by appellant, to the effect that the jury must find the issues for appellant because the suit was brought before the note sued on was due by its terms. The refusal was excepted to and was made one of the grounds of the motion for a new trial. We doubt if this question could be raised for the first time on the trial by an instruction, because if this objection had been interposed before the close of the evidence it may be that proof could have been offered that would have obviated it. It may be that appellees could have shown that appellant had agreed to waive this point. It was purely technical because appellant was not served until after the maturity of the note, and the bringing of the suit was a presentation to the administrator so that another suit could have been maintained or the claim could still have been filed against the estate, and the record shows that appellant had one or more witnesses present from a foreign state, so that it might very well be that he did not wish to raise the point at the trial, but was willing to waive it. We think, therefore, that this point should have been raised before the evidence was closed. Appellees had no means of knowing

what instructions requested by the appellant the court refused and very likely were not apprised of the fact that such an instruction had been requested till after verdict. We think that where an objection of this kind is capable of being removed by further proof, it should be raised before the close of the evidence. Second. Under section 67 of chapter 3 of the Revised Statutes relating to the Administration of Estates, appellees could have filed and secured the allowance of this claim against the estate in the county court, notwithstanding it was not yet due. The holder of a claim against an estate of a deceased person is not required to proceed in the county court, but may bring an original suit against the executor in the circuit court. This is because the jurisdiction of the circuit court is conferred by the Constitution and cannot be withdrawn or limited by legislation. This was held in Darling v. McDonald, 101 Ill. 370; Roberts v. Flatt, 142 Ill. 485, 493; Starrett v. Brosseau, 208 Ill. 408, 412, and in a number of cases in the appellate courts. While as to summons and pleadings this has the form of an ordinary action at law, it is not so as to the judgment recovered. It is not a judgment which creates a lien upon real estate nor can an execution be had and personal property seized thereunder. The judgment is only for the payment of certain moneys by the administrator in due course of administration of the estate of the deceased. While the form used by the circuit clerk in writing the order of the court may slightly differ from that used by the county clerk on the allowance of claims, the substance and the effect are the same. A suit brought against an administrator in the circuit court is therefore not brought to secure an ordinary judgment at law, but it is brought for the same purpose for which a claim is filed in the county court, namely, to secure an order fixing its amount and requiring it to be paid in due course of administration. If appellees had filed this note as a claim against the estate, the defeated party could have appealed from the county court to the circuit court and the circuit court would then have had jurisdiction to try the case and enter the same judgment which was here entered, notwithstanding that when the claim

was filed in the county court the note had not matured. By beginning in the circuit court appellees shortened the time when a final decision could be reached. We are disposed to hold that this proceeding to procure the allowance of the claim could be brought in the circuit court before the maturity of the debt, as well as in the county court; though this conclusion is one of first impression only.

Defendant produced as a witness an expert in handwriting, who testified that for many years he had devoted himself to the study of handwriting and of genuine and forged signatures; that no person can write his signature twice alike; that if several supposed signatures of one person exactly coincide in width and height and the like, and, if, when superimposed upon each other before a strong light, such signatures exactly coincide in every particular, that fact is practically conclusive proof that they have been traced over some signature; that a traced signature is written more firmly and slowly than a signature written in the ordinary way; that he had examined the signature "D. C. Miller" to the note in suit under magnifying glasses of various powers, and that in his opinion it had been made by tracing over some other signature. It had incidentally appeared in appellees' proofs that when appellees purchased the note in suit from Harrison Miller they bought another note at the same time. At the time of the trial there was then pending in the same court another suit by appellees against appellant and another on a note for $4,500, purporting to be executed by D. C. Miller and La Fayette Miller, payable to the order of Harrison Miller and by him endorsed, and this note, on motion of the defendant in that suit, had been impounded. Appellant on cross-examination of appellees' witnesses had them identify said $4,500 note as the other note which they bought from Harrison Miller at the same time they bought the note here in suit. Appellant offered that note in evidence. Appellant also offered evidence tending to show that a suit had been brought in the district court of Scott county, Iowa, by L. C. Miller against Ella Quinn, executrix of the estate of James Quinn, deceased, up-

on a promissory note dated at Davenport, Iowa, September 14, 1907, for the sum of $15,000 with interest at six per cent per annum, payable semi-annually, executed by James Quinn and payable to the order of D. C. Miller nine months after date, bearing upon the back thereof the purported endorsement of D. C. Miller; that in said trial it was claimed that the purported signature of D. C. Miller on the back of the note was a forgery and that that defense was sustained in that court; that appellant had sought leave to have said note withdrawn from the files of that court for use in this trial and that such leave had been refused because that case was pending in the supreme court of Iowa; and that appellant had procured said note and the back thereof to be photographed correctly and of its natural size. Appellant also offered to prove that a witness on the trial of that case in the Scott County District Court testified that the writing filling up the face of that note was in the hand of Harrison Miller. Appellant offered in evidence said $4,500 note and said photograph of said $15,000 note, and offered to prove by his expert that upon careful measurement of the purported signature of D. C. Miller on the face of the $6,500 note, upon which this suit was based, and of the $4,500 note and in the photograph of the back of the $15,000 note, the various dimensions of said three signatures exactly agreed in every particular, and that when said three signatures were superimposed on each other before a strong light they exactly coincided in every respect, and that the signatures on the face of the $6,500 note and of the $4,500 note were exactly the same distance from the margin of the printed blanks upon which they were written, and that these facts showed that said three purported signatures of D. C. Miller were tracings from the same signature. This expert was entirely unacquainted with the handwriting of D. C. Miller. The court refused to admit this evidence. The rule is very firmly settled in this State that the genuineness or falsity of a handwriting or signature cannot be proved by comparison with other admittedly genuine handwriting or signatures, unless said other handwriting or signatures are in evidence in the case for some other

legitimate purpose or at least are among the files of the case and a part of the record. Among the cases establishing and illustrating this rule are Pate v. People, 3 Gilm. 644, 660; Jumpertz v. People, 21 Ill. 374, 407; Kernin v. Hill, 37 Ill. 209; Putman v. Wadley, 40 Ill. 346; Brobston v. Cahill, 64 Ill. 356; Melvin v. Hodges, 71 Ill. 422; Massey v. Farmers' Nat. Bank, 104 Ill. 327; Bevan v. Atlanta Nat. Bank, 142 Ill. 302; Riggs v. Powell, 142 Ill. 453; and Himrod v. Gilman, 147 Ill. 293. While what appellant here proposed was not the usual comparison of hand writing proposed upon such a trial, yet it is evident that what appellant offered was merely a comparison of the signature to the note in question with signatures to other instruments purporting to be by the same party. Appellant has made a strong argument that in a case of this particular kind, where it is alleged that the signature in issue exactly resembles the genuine signature of the party because it has been produced by tracing over a genuine signature, and the other signatures are presented for the purpose, not of showing that they are genuine but that they also had been produced by the same fraudulent means, the rule in this State should be relaxed and such testimony should be received. While recognizing that there is much force in appellant's argument on this subject we do not feel at liberty to set aside a rule so thoroughly established and so long prevailing. We are of opinion that if any change or modification or enlargement of the rule ought to be made, such change cannot reasonably be asked of this court. We deem it our duty to follow the rule as we find it.

There was proof that the deceased left eight or nine heirs at law. Among these were Loren B. Miller, who became his administrator, and Clark Miller. There was evidence of an interview by one of appellees with Loren B. Miller and Clark Miller when they were negotiating for the purchase of these notes, and that said appellee showed the notes to said sons and asked them if the notes were all right and that they made no reply. It is argued that this evidence was incompetent as these heirs could not bind the estate nor their co-heirs

at law. There was no proof that Loren B. Miller had at that time been appointed administrator, so that the question whether an administrator could bind an estate by his admissions or silence is not presented for decision. We are clear that as they were not the only heirs at law their conduct did not bind the estate and that the evidence was incompetent. But appellant did not object thereto. He did afterwards offer instructions to the effect that this conduct should not prejudice the appellant's rights. The court refused these instructions. We are of the opinion that at least two of them should have been given, but we conclude that appellant was not harmed by their refusal because no other verdict than the one rendered could reasonably have been returned. Numerous witnesses identified the signature to the note as the genuine signature of D. C. Miller. No one testified that it was not. We are of opinion that the testimony of the expert that it was his opinion that this signaure had not been written in the ordinary way, but had been traced, was not sufficient alone to overcome the testimony of the witnesses, some of them very familiar with the signature of D. C. Miller, who recognized this as his genuine signature. Indeed, it is evident that the expert was really testifying from a comparison of this with the other signatures which were not in evidence. The proof warranted no other verdict than that rendered, and therefore the refusal of the instructions in question did not harm appellant. The court gave an instruction requested by appellant to the effect that appellees must prove by a preponderance of the evidence that the note sued upon was executed by D. C. Miller, but refused an instruction requested by appellant that that meant not only that D. C. Miller signed the note, but also that he delivered it to Harrison Miller, and unless they believed from a preponderance of the evidence that D. C. Miller not only signed the note but also delivered it to Harrison Miller, they should find for appellant. The proof showed Harrison Miller in possession of the note, and that he sold, endorsed and delivered it to appellees. This proof *prima facie* established delivery of the note to Harrison Miller. Hunter v. Harris,

131 Ill. 482. There was no proof to the contrary. The jury could not do otherwise under the proof than find that the note had been delivered, and therefore no harm was done appellant by the refusal of said instruction. The court refused instruction No. 1, requested by appellant, to the effect that if either party had failed to produce evidence which was competent and could have been obtained, they might consider that circumstance with the other evidence in the case. This instruction left it to the jury to determine what evidence was competent, and was therefore properly refused. But the purpose of the instruction seems to have been to authorize the jury to draw an unfavorable inference against appellees because they failed to call Harrison Miller as a witness. There was no proof where Harrison Miller was nor that appellees could have produced him. The endorsement by Harrison Miller on the back of this note made him a guarantor of the genuineness of the signature of D. C. Miller. He therefore was not a competent witness against the estate of D. C. Miller to establish the signature to the note. Appellees therefore were not lawfully subject to any unfavorable inference because they failed to call him.

. The judgment is therefore affirmed.

*Affirmed.*