Martin L. Massman, Successor Receiver of Garfield State Bank, Appellee, v. Thomas J. Duffy et al., Defendants.

Joint and Several Appeal of Angelantonio Di Nunzio et al., Appellants.

Gen. No. 43,634.

Opinion filed November 20, 1946. Released for publication December 5, 1946.

EDWARD H. S. MARTIN, of Chicago, for appellants.

JOHN MULDER, of Chicago, for appellee.

ON REHEARING.

MR. JUSTICE BURKE delivered the opinion of the court.

On May 12, 1925 Michael J. Duffy and Frances M. Duffy, his wife, being indebted in the sum of $35,000, made and delivered their 118 bonds in the aggregate principal sum of $35,000, payable to bearer, numbered from 1 to 118, both inclusive, bearing interest at 6½ per cent per annum until maturity, the interest being evidenced by coupons. The maturity date of the bonds was June 10, 1930. The makers executed and delivered a trust deed, conveying to the Garfield State Bank, as trustee, the real estate improved with a store and apartment building at the northeast corner of Kenneth avenue and Harrison street, Chicago, for the security of the holders of the bonds. The trust deed was recorded on May 12, 1925. On November 16, 1927 Thomas J. Duffy, a bachelor, the owner of the real estate, made and delivered his one principal promissory note for $11,000, payable $800 or more on or

before 8 months after date, then monthly payments of $100 or more until December 16, 1932, when the unpaid balance became payable, with interest at 6 per cent per annum. To secure the payment of the indebtedness Thomas J. Duffy on November 16, 1927 made and executed a trust deed to the Garfield State Bank, as trustee, conveying the real estate. This trust deed was duly recorded.

On September 4, 1928 Thomas J. Duffy conveyed title to the real estate to Maria Di Nunzio. The deed was recorded on September 5, 1928. She took title subject to, but did not assume, the payment of the indebtedness secured by either trust deed. The Garfield State Bank, the trustee in the two trust deeds, by its deed dated May 5, 1931 and recorded May 15, 1931, released the lien of the trust deeds on the south 9.21 feet of the real estate, without the consent of any of the three Duffys. At that time Maria Di Nunzio was the owner of the real estate. On June 10, 1931 default was made in the payment of all bonds secured by the first mortgage. On June 11, 1931 the Garfield State Bank, as trustee under the first mortgage, was closed by order of the auditor of public accounts. At that time the bank was the owner of the bonds secured by the trust deed. On March 4, 1932 John E. Sullivan, then receiver of the bank, resigned the trusteeship of the bank under the trust deed, and as the owner of all the bonds, appointed William T. Sullivan as successor trustee under the trust deed. On March 21, 1932, William T. Sullivan, as successor trustee, filed a bill of complaint in the circuit court of Cook county to foreclose the lien of the first mortgage. On May 16, 1932 default was made in the payments due under the junior mortgage. On January 16, 1933 Maria Di Nunzio died intestate and on June 15, 1933 letters of administration of her estate were issued to Ottavio Di Nunzio by the probate court of Cook county. She left her

surviving as her only heirs and next of kin Joseph Di Nunzio, her husband, Angelantonio Di Nunzio, Dante Di Nunzio, Manfredino Di Nunzio, Settimio Di Nunzio, Ottavio Di Nunzio, Augusto Di Nunzio and Armondo Di Nunzio, her sons, Serafina Palanza, Gemma Rich (formerly Gemma Scuderi), Cesira Cook and Elvira Barton (formerly Elvira Di Nunzio) her daughters. Thereby, Joseph Di Nunzio became vested with a 1/3 interest (or 11/33rds), and each child with a 2/33rds interest. From March 21, 1932 until early in 1941 extended proceedings were had in the foreclosure case filed by William T. Sullivan, as successor trustee. Hearings were had before a master in chancery to whom the cause was referred. The principal defendants carried on negotiations to settle the foreclosure case. Early in 1941, while the case stood referred to a master in chancery, it was listed on a "no progress" call of the circuit court. Counsel for plaintiff and defendants made a joint request for a continuance. Due to a misunderstanding, the cause was dismissed for want of prosecution. The knowledge that an order of dismissal had been entered was not discovered until more than 30 days after the date of its entry. On August 6, 1942 John E. Sullivan, as receiver of the bank, being the holder of the notes secured by the junior mortgage, filed a complaint to foreclose this mortgage in the circuit court of Cook county. A summons was delivered to the sheriff with directions that it be returned as to all defendants. When plaintiff delivered the summons to the sheriff, he paid no fees for service, giving to the sheriff only the 50 cent statutory fee for returning the summons. No attempt was made to serve a summons on any defendant prior to May 1943.

On February 15, 1943 the heirs and next of kin of Maria Di Nunzio appeared by filing their joint and several motion to dismiss the complaint (to foreclose the second mortgage) on the ground that the cause

of action was barred by the statute of limitations. The affidavit attached to the motion alleged that the complaint was filed August 6, 1942; that no summons or other process was served on defendants; that no attempt had been made to have any service made; that plaintiff directed the sheriff not to serve the Chicago Title & Trust Company, trustee; that the last instalment of the note secured by the junior trust deed became due on December 16, 1932; that since then no payment or promise to pay had been made; and that Angelantonio Di Nunzio, on and after December 16, 1932, resided and was within the State of Illinois. The court overruled the motion, but gave Angelantonio Di Nunzio permission to file another motion to dismiss on the same grounds, limited to himself. He adopted this course. The affidavit attached to his motion contained the same allegations as the other affidavit. On May 10, 1943 the court sustained his motion to dismiss on the ground that the cause of action was barred as to him by the statute of limitations, and dismissed the complaint as to him at plaintiff's costs. Two of the defendants, Serafina Palanza and Morris Palanza, her husband, elected to abide by the first motion to dismiss. All the other defendants answered, setting up, among other things, the same allegations as were contained in the affidavits, the facts as to the partial release of the trust deed, that Angelantonio Di Nunzio was in possession of the real estate, and that the cause of action was barred by the statute of limitations. On June 30, 1944 plaintiff filed a second amendment to the complaint in which he sought a foreclosure of the senior encumbrance and again made Angelantonio Di Nunzio a party to the suit. Angelantonio Di Nunzio, Serafina Palanza and Morris Palanza then filed motions to dismiss this amendment on similar grounds to the former motions. These motions were sustained and the second amendment was dismissed as to Angelantonio Di Nunzio and

Serafina and Morris Palanza. The other defendants answered the second amendment, setting up similar defenses to those in their former answer and in the motions.

The case was referred to a master in chancery, who reported that there was due to the plaintiff under the first mortgage, including principal, interest, costs and attorney's fees the sum of $47,997.97, and on the second mortgage $14,165.33. He found that the senior trust deed was a valid first lien upon a 29/33rd interest in the premises, and that the junior trust deed was a valid lien upon a 31/33rd, subject to the senior lien. Objections to the report were allowed to stand as exceptions. The court overruled the exceptions and entered a decree of foreclosure, as recommended by the master. After the decree had been entered, it was ascertained that Joseph Di Nunzio, the widower, died prior to the entry of the decree. The decree was vacated, his death was suggested and an order was entered allowing the cause to proceed against the surviving defendants. Angelantonio Di Nunzio was again brought into the case. He filed another motion to dismiss on the same grounds on which he had based his previous motions, and also on the ground that the former decisions in his favor were *res judicata* against the right to foreclose as to the 1/33rd interest which he had inherited from his father, as well as the 2/33rds interest which he had inherited from his mother. The court overruled the motion. Angelantonio Di Nunzio elected to abide by his motion. Thereupon, a decree of foreclosure was entered ordering the sale of the real estate under the senior encumbrance, except the 4/33rds interest of Angelantonio Di Nunzio and Serafina Palanza, should the amounts found to be due be not paid, and foreclosing all right or equity of redemption of all defendants, if the property be not redeemed according to law, and also providing that if the sale did not bring sufficient to satisfy the

junior encumbrance also, then the 2/33rds interest of Serafina Palanza should be sold at the foreclosure sale. All of the children of Maria Di Nunzio and Joseph Di Nunzio, both deceased, have prosecuted joint and several appeals from the decree. No payment has been made on the notes secured by the junior trust deed since May 16, 1932, nor has there been any promise made since then, and no other extension has been made.

The complaint to foreclose the junior encumbrance was filed on August 6, 1942. On that day a summons was issued by the clerk and delivered to the sheriff. He returned the summons on that day, with the notice that 50 cents was paid and that no directions were given to serve ''the defendant corporation'' and that the other defendants were not found in ''my county.'' Sec. 11 of the Limitations Act (par. 11, ch. 83, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 107.269]) provides that no person ''shall commence an action or make a sale to foreclose any mortgage or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues.'' Defendants maintain that the right to foreclose was barred by this limitation. Plaintiff filed his complaint in the clerk's office and had the summons delivered to the sheriff within ten years after maturity of the indebtedness. Nothing further was done in the case until appellants filed their motion to dismiss on February 15, 1943, more than two months after the ten year limitation period had expired. Defendants say that plaintiff's failure to endeavor in good faith to have process served, did not toll the running of the statute of limitations, citing *Gage v. Chicago Title & Trust Co.,* 303 Ill. 569, and other cases. The question in the *Gage* case was whether a plaintiff was entitled to revive an ejectment suit. The factual situation there presented is not comparable to the situation in the case at bar, and we

find that the principle there announced is not applicable to the instant case. Sec. 5 of the Civil Practice Act provides that every civil action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint and that the clerk shall issue a summons upon request of the plaintiff. Sec. 11 of the Limitations Act does not define what is meant by the commencement of an action, but leaves that to the statutes and rules in effect from time to time. In *Vincent v. McElvain,* 304 Ill. 160, the court said (163):

"It is well established by repeated decisions of this and other courts that a suit or action is commenced when a party puts in motion, under his claim, the instruments of the court. Where the court is one of general jurisdiction it acquires jurisdiction of the plaintiff and the plaintiff's cause when he applies for its power and assistance to compel the defendant to render him his rights under the law."

In *Schroeder v. Merchants' & Mechanics' Ins. Co.,* 104 Ill. 71, the court held that under the Practice Act in effect at that time that a suit was commenced when a summons was issued. There, plaintiff's attorney neglected to place the summons in the hands of the sheriff for service. See also *Fish v. Farwell,* 160 Ill. 236; *Schmidinger v. Balling,* 91 Ill. App. 388; *Stitzel v. Miller,* 157 Ill. App. 390. We find that the action to foreclose the lien of the junior trust deed was commenced on August 6, 1942, when the complaint was filed and that having been commenced within ten years after the right of action accrued, it is not barred by sec. 11 of the statute of limitations.

The amendment to foreclose the lien of the senior encumbrance was filed on June 30, 1944. On June 10, 1931 default was made in the payment of all bonds secured by this trust deed. Defendants insist that the lien of the first encumbrance is barred

by the ten year statute of limitations. Plaintiff resists by citing sec. 18 of the Limitations Act, (par. 19, ch. 83, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 107.278]) providing that if, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the times therein limited, after his coming into or return to the State, and that if, after the cause of action accrues, he departs from and resides out of the State, the time of his absence is no part of the time limited for the commencement of the action. Angelantonio Di Nunzio, who resided in Illinois, was in possession of the premises. His brothers and sisters were nonresidents of this State since the default in the payments due under both the first and second mortgages. Defendants lean heavily on the case of *VonCampe v. City of Chicago,* 140 Ill. 361, where the court said (370):

■■ "Section 18 of the Limitation Act of 1872 has no application to the absence from the State, or non-residence, of remote grantees or assigns of the mortgagor, when they have acquired their interest in the equity of redemption after the cause of action has accrued, and when neither they nor the original mortgagor have assumed any personal liability to pay the debt secured by the mortgage. They are not the persons against whom the cause of action has accrued within the meaning of section 18."

We are of the opinion that the *VonCampe* case is not applicable to the instant case. There, the original mortgagor contracted no personal liability. Here, the original mortgagors became personally obligated to pay the debt. Sec. 11 states that no person shall commence an action to foreclose a mortgage or trust deed in the nature of a mortgage unless within ten years after the right of action accrued, and sec. 18 provides that if, when the cause of action accrues against a person, he is out of the State, the action

may be commenced within the times limited after coming into or returning to the State. The holder of a note secured by a trust deed may bring an action in assumpsit on the note, he may sue to foreclose, or he may bring ejectment proceedings, and he may pursue all of these remedies at the same time. He may have only one recovery. His right or cause of action accrues against the maker or anyone who assumed the debt when it became due, and his right of action in foreclosure against the equity owner to foreclose his right of redemption accrues at the time the debt becomes due. In the instant case the right of action against the makers of the notes and against the owners of the equity accrued at the same time. While the statute of limitations is not a defense as to strangers, it is a defense to those in privity with the makers of the notes, such as subsequent grantees. ''The plea of the Statute of Limitations is generally a personal privilege, and may be waived by a defendant, or asserted at his election; but where he has parted with his interest in the property, his grantees, mortgagees, or other persons standing in his place are entitled to avail themselves of all the advantages of this plea.'' 1 Wood on Limitations, sec. 41 (2d ed. 1893), p. 96.

The decree in the instant case forecloses the equities of redemption as to the first and second mortgages. In order to foreclose the equities of the defendants, it was necessary to make them parties defendant. When the respective debts fell due there was a right of action in the trustees, or the holders of the notes, to foreclose the equity of redemption of Maria Di Nunzio and later of her heirs. When the cause of action accrued, and until the filing of the complaint, defendants except Angelantonio Di Nunzio were non-residents of this State. It is clear that the right of action to foreclose their equity accrued against them. The cause of action mentioned in sec. 18 is the ''right

of action'' mentioned in sec. 11. In our opinion, the fact that the defendants, except Angelantonio Di Nunzio, were nonresidents, tolled the statute of limitations as to such defendants, and the action to foreclose the trust deed is not barred as to them by sec. 11 of the Limitations Act. Defendants are ''persons against whom the cause of action has accrued within the meaning of sec. 18.''

As a further defense, appellants argue that when the trustee released 9.21 feet of the mortgaged premises without the consent of the mortgagors, it deprived the mortgagors of the benefit thereof as to such released 9.21 feet, and that since they had not consented to the release, the liability on the indebtedness was thereby discharged. Defendants say that the mortgagors remained liable on the mortgage indebtedness, but that the mortgaged real estate was the primary fund and security for the payment of the indebtedness and their protection against being compelled to pay that indebtedness themselves. Martin L. Massman, called as a witness by plaintiff, testified that he was manager of the real estate department of the bank; that the elevated railroad operates and maintains tracks immediately ''in back of the property''; that the railroad company widened its tracks; that a portion of the premises was condemned; that ''the money paid in those condemnation proceedings was paid to the Garfield State Bank and applied on the indebtedness secured by the trust deed introduced in evidence.'' Asked by the attorney for plaintiff, ''Was it a portion of that money that was used to retire the bonds numbered 1 to 70, both inclusive?'' he answered: ''That is right.'' From this testimony we are of the opinion that the master and the chancellor were justified in finding that the money received for the condemnation of the 9.21 feet was applied in the reduction of the first mortgage, which benefited the mortgagors and the equity owners. At that time

Maria Di Nunzio, the mother of defendants, was the equity owner. The condemnation suit would not proceed without service on the equity owner. Before the elevated railroad would pay out any money for the strip of land taken, whether after judgment or by settlement, it would require a quitclaim deed or some release of the interest of the equity owner. Defendants, deriving their title from Maria Di Nunzio, who was the equity owner at the time, are in no position to complain about the action of the trustee in releasing the first and second mortgages as to the 9.21 feet.

Defendants urge that the decree is erroneous in combining in one foreclosure suit the senior and junior mortgages. We cannot agree with this contention. The chancellor has ample power to protect the parties in the taxing of the costs. Angelantonio Di Nunzio contends that as between plaintiff and him the decree in his favor was *res judicata;* that it was so adjudicated as to the junior mortgage when his first motion to dismiss was sustained; and that it was also so decided as to the senior mortgage when he was again brought into the suit. When, following his father's death, he was again brought into the suit, because of his inheritance of another 1/33rd interest from his father, the court ruled against him. Angelantonio Di Nunzio can have no greater right in the 1/33rd interest of his father than the latter had. Joseph Di Nunzio, the father, died pending the foreclosure and his death was suggested to the court. There was no prior adjudication between the plaintiff and the defendant, Angelantonio Di Nunzio with reference to this 1/33rd interest. Consequently, the doctrine of *res judicata* is not applicable.

Some of the defendants argue that the doctrine of laches furnished them a good defense. They state that the neglect of plaintiff's predecessor to pursue his remedy to foreclose until it had been barred by the statute of limitations against the interest of An-

gelantonio Di Nunzio in the property as to both encumbrances, and as against the interest of Serafina Palanza as to the senior encumbrance, injures them because the foreclosure of the encumbrances against their interests would make them bear the entire burden without any right of contribution against the 2/33rds interest of Angelantonio Di Nunzio as to either encumbrance and against the other 2/33rds interest of Serafina Palanza as to the senior encumbrance. The fact that Angelantonio Di Nunzio, as the co-owner, with the other defendants, of the equity in the mortgaged premises, is entitled to the defense of the statute of limitations, is not such prejudice to the other nonresidents as to permit the defense of laches. A bill to foreclose was filed on March 21, 1932. Appellants joined in requests to the court that the foreclosure case be continued. By accident or mistake the complaint was dismissed. There is no hard and fast rule by which to determine the application of a defense of laches. The relative positions of the plaintiff and defendants were not changed by lapse of time. In our opinion, the chancellor wisely exercised his discretion in refusing to allow appellants' defense of laches.

For the reasons stated, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

KILEY, P. J., and LEWE, J., concur.