**Hayim KALMICH, Plaintiff-Appellant,**

**v.**

**Karl BRUNO, Defendant-Appellee.**

**No. 76–1882.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1977.

Decided April 25, 1977.

Rehearing and Rehearing En Banc Denied June 28, 1977.

**550**

Norman A. Handelsman, Robert Handelsman, Chicago, Ill., for plaintiff-appellant.

James G. Meyer, Lester E. Munson, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

This is a diversity case between plaintiff-appellant Hayim Kalmich, a citizen of Quebec, Canada, and defendant-appellee Karl Bruno, a citizen of Illinois. The district court, sitting in Illinois, dismissed the complaint for failure to state a cause of action on the basis that the claim was barred by the pertinent Illinois statute of limitations.[1] Kalmich seeks reversal on the grounds that the district court should have applied the longer statute of limitations of Yugoslavia, where the cause of action arose, that Bruno should be estopped to plead the statute of limitations in any event, and that one count of the complaint states an equitable claim not subject to the statute of limitations, but only to a laches defense which, it is asserted, does not apply to this case.

### I.

In reviewing the district court's dismissal of Kalmich's complaint, we assume the truth of these facts well-pleaded in that complaint. In 1941, Kalmich, a Jew, resided in Belgrade in his native Yugoslavia and operated and owned a textile importing business. In April of that year, the armies of Nazi Germany invaded and conquered Yugoslavia, forcing the incumbent government of Yugoslavia into exile.[2] The occupation forces shortly installed a General Plenipotentiary for the Economy in Serbia, whose responsibility was to "Aryanize" the economy by seizing and confiscating all businesses and property owned by Jews, solely because they were Jews.

Bruno is alleged to have voluntarily subordinated himself to the General Plenipo-

---

1. The district court's Memorandum Opinion and Order of October 14, 1975, is reported at 404 F.Supp. 57. An unreported Memorandum Opinion of June 25, 1976, denied Kalmich's motion to alter judgment, and an amendment to that opinion and order, dated July 13, 1976, granted leave to file a second amended complaint and dismissed same because it also was

time barred. Thus it is the second amended complaint which is before us.

2. The complaint also alleges that the government-in-exile was at all times while in exile recognized by the United States as the lawful and sovereign government of Yugoslavia.

tentiary,[3] and when an order for the seizure of Kalmich's business was issued on June 24, 1941, Bruno was given the duties of managing and operating the business. He seized the business and proceeded to run it. In March of 1942, Bruno substantially understated the value of the business to his superiors to enable him to purchase it from them at a bargain price. That same month, he bought the business from the General Plenipotentiary for even less than the value he had previously stated. Thereafter, he resold the business to one Guc, presumably at a profit.

The complaint alleges that sometime prior to the defeat of the German occupation forces in Yugoslavia, Bruno "to avoid, prevent and frustrate any prosecution for his knowingly willful and malicious conduct, fled Yugoslavia for places unknown to the Plaintiff." After the end of the war, Kalmich spent substantial time, money, and effort unsuccessfully attempting to find Bruno for redress in a search that covered five countries. It was only in May of 1972 that Kalmich discovered, from sources not disclosed, that Bruno was living in Chicago, Illinois. This lawsuit followed.

Count I of the complaint seeks damage recovery under statutory provisions of Yugoslavian law which are summarized therein to provide the notice of foreign law issues required by Rule 44.1, Fed.R.Civ.P. One general provision referred to in the complaint is a broad repeal of all statutes, ordinances, decrees, and regulations enacted prior to the date of the Nazi invasion, and all those enacted by the Nazi occupation forces; presumably this repeal provision was an attempt to clean the slate for new laws enacted after the war. The remaining statutes, and their interrelationships, are important to the disposition of this case,

and the pertinent paragraphs of the complaint summarizing these are therefore set out in full:

23. That at a time unknown to the Plaintiff but after the termination of World War II the nation of Yugoslavia enacted Article 125 of the Criminal Code [Article 125] which provides that anyone who confiscated belongings of another during World War II, for nonmilitary purposes, would be subject to criminal prosecution.

24. That in 1965, the nation of Yugoslavia enacted Article 134(a) of its Criminal Code [Article 134(a)] which provides that there shall be no statute of limitations upon the prosecution of those accused of violations of Article 125.

25. That on or about August 16, 1946, Sec. 1 of the Law Concerning the Treatment of Property . . . Taken Away From the Owner by the Enemy or its Helpers [Section 1] became effective in Yugoslavia, said Law providing a civil cause of action for those whose belongings were confiscated by the German occupation force.

26. That, in 1953, Section 20 of the Yugoslavian Statute of Limitations, as amended [Section 20], became effective, said Section providing that the statute of limitations upon criminal actions shall serve as the statute of limitations upon civil actions if the conduct complained of in the civil action could subject the Defendant to a criminal prosecution.

Actual damages, interest, and punitive damages totalling $1,826,208, plus costs and any post-judgment interest were sought.

Count II of the complaint, referring generally to the allegations of Count I, asserts that Bruno obtained Kalmich's property

---

**3.** In the statement of the case in his brief, Bruno adverts to his vigorous objections in the district court to accusations that the defendant's conduct was motivated by religious bigotry. The defendant's motion to strike these allegations as scandalous was not reached by the district court in view of its disposition of the case. The complaint basically alleges that the conquering government in which the defendant of his own free will participated seized the plaintiff's business solely because of his religious beliefs. Despite some recent belated apologists for the Nazi regime, we entertain no doubt that substantial confiscation of businesses did occur as alleged, and that such allegations constitute a proper part of the case plaintiff is attempting to pursue. He, of course, if permitted to pursue his case will have to come forward with proof to support these allegations.

(the business) in an unlawful and tortious manner, and seeks recovery under a constructive trust theory in the same amounts as mentioned above, plus all profits and proceeds received by Bruno from his possession and sale of the business.

## II.

In considering the issues raised, we note at the outset the defendant's contention that in determining whether the district court misconceived or misapplied state law the appellate court is limited to determining whether or not the district court made permissible interpretations of the applicable state law, citing *Harris v. Hercules, Incorporated*, 455 F.2d 267, 269 (8th Cir. 1972). The defendant further contends that the reviewing court will not reverse a determination on the part of a federal district court judge of the local law of his state unless there is a firm conviction that it was clearly erroneous, citing *Harris* and *Hogue v. Pellerin Laundry Machinery Sales Company*, 353 F.2d 772, 776 (8th Cir. 1965).

■ We have no particular quarrel with these contentions nor with the assertion that under the circumstances described we should give deference to the district court judge's determination of local law. Here, however, in our opinion the ultimate resolution of the appeal turns upon the determination not only of Illinois law but also that of Yugoslavia, a "foreign country" under Rule 44.1, Fed.R.Civ.P. Irrespective of the deference to which a district court judge's determination of the local law is entitled, we regard the matter of foreign country law as purely a "question of law," as it is characterized in Rule 44.1, the resolution of which we are free to arrive at on the basis of our own independent research and analysis. For a general discussion of the scope of appellate review under Rule 44.1, see 9 Wright & Miller, Federal Practice and Procedure § 2446, at 414–15 (1971).

## III.

■ In diversity cases, of course, a federal court applies the substantive law of the state in which it sits. *Erie Railroad Co. v.*

*Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where the laws of more than one jurisdiction are at least arguably in issue, the *Erie* reference to the law of the forum state includes that state's choice of law rules. *Klaxon Company v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Griffin v. McCoach*, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941).

We think it clear, and neither party disagrees, that the Illinois courts would choose to apply the substantive law of Yugoslavia to this case. Yugoslavia was the site of the tort and the injury, and we can think of no argument that would demonstrate that Illinois has a more significant relationship with this case than has Yugoslavia. *See Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970). Moreover, the district court's cogent analysis, 404 F.Supp. at 61–63, demonstrates beyond any real question that this is the type of foreign cause of action that the courts of Illinois will enforce. *See generally Hartness v. Aldens, Inc.*, 301 F.2d 228 (7th Cir. 1962); *Clubb v. Clubb*, 402 Ill. 390, 84 N.E.2d 366 (1949). Although only Count I is expressly rooted in Yugoslavian law, these conclusions apply with full force to Count II as well. Even if Illinois courts would apply the principles of Illinois equity jurisprudence to Kalmich's constructive trust theory, the underlying premise of the theory, the asserted unlawfulness and tortiousness of Bruno's seizure of Kalmich's business, would have to be measured by Yugoslavian law. *See Ingersoll v. Klein, supra.*

■ The choice of the applicable statute of limitations poses a different, and, in this case, a more difficult problem. State law barring an action because of a statute of limitations is sufficiently "substantive," in the *Erie* sense, that a federal court in that state exercising diversity jurisdiction must respect it. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Illinois has a five year statute of limitations governing actions for damages for injury to real or personal property. Ill.Rev.Stat.1975,

ch. 83, § 16. As pleaded in the complaint, Yugoslavia's statute of limitations applicable here appears to be perpetual. The question then, if not the answer, may be simply put: which statute of limitations should be applied under Illinois' choice of law rules?

■ The basic choice of law rule pertaining to statutes of limitations, in Illinois as elsewhere, is that such statutes are "procedural in their nature," *Hilberg v. Industrial Commission*, 380 Ill. 102, 105, 43 N.E.2d 671 (1942), that they "generally affect only the remedy and not substantive rights," *Jackson v. Shuttleworth*, 42 Ill.App.2d 257, 260, 192 N.E.2d 217, 218 (1963); *Wetzel v. Hart*, 41 Ill.App.2d 371, 374, 190 N.E.2d 619 (1963), and, thus, that the limitations statutes of the forum will usually apply, even though the causes of action to which they are applied may have arisen in and been governed by the substantive law of another jurisdiction. *Id.*

■ An exception, however, is recognized in certain circumstances where the foreign cause of action is statutorily based. As the Illinois Supreme Court noted in *Smith v. Toman*, 368 Ill. 414, 420, 14 N.E.2d 478 (1938):

> [T]his court has given consistent recognition to the principle that where [a] statute creates a right that did not exist at common law and restricts the time within which the right might may be availed of, or otherwise imposes conditions, such statute is not a statute of limitation [in the normal sense] but *the time element is an integral part of the enactment.* [Emphasis supplied.]

*Accord, Shelton v. Woolsey*, 20 Ill.App.2d 401, 404, 156 N.E.2d 241 (1959). Neither *Smith* nor *Shelton* were choice of law cases; in both the principle was articulated because helpful in resolving analogous questions of Illinois law. *Jackson v. Shuttleworth, supra*, 42 Ill.App.2d at 259, 192 N.E.2d at 218, states the rule in a choice of law context:

> It is true that a number of decisions in the federal courts have held that the statute of the state wherein the cause of action arose is the applicable statute, but an examination of those cases discloses that the statutes involved were not strictly statutes of limitation, but were statutes creating the cause of action and limiting the time in which such newly created right might be asserted. Where the right of action depends upon statute and where no such right of action existed at common law, the time for bringing action is determined by the lex loci, because *the lex loci establishes the substantive rights of the parties, and where a limitation is placed upon the assertion of that right, it has been correctly held to be a matter of substantive, as distinguished from procedural law.* Haefer v. Herndon, 22 F.Supp. 523 [S.D.Ill.1938]. [Emphasis supplied.]

To the same effect, *see Anderson v. Linton*, 178 F.2d 304, 310 (7th Cir. 1949); *O'Neal v. National Cylinder Gas Co.*, 103 F.Supp. 720, 725 (N.D.Ill.1952).

■ Stated in the forms just quoted, the exceptional rule allowing the application of the statute of limitations of the locus of the tort does not quite fit this case, for the Yugoslavian statute creating the right sued upon does not create its own limitation. Although disagreeing as to the correctness of its application, the parties do agree that the district court correctly utilized a somewhat broader rule, suggested by Mr. Justice Holmes' opinion for the Court in *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 694, 48 L.Ed. 1067 (1904), in which it was said:

> [T]he fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right.

This "specificity" test has previously been used in applying Illinois law, *see O'Neal v. National Cylinder Gas Co., supra*, and we also agree that the question of whether a foreign statute of limitations goes to the

substance of a foreign right cannot sensibly turn on matters of pure form. *See also* 25 I.L.P. *Limitations* § 4, at 180 (1956).

We note a problem not addressed by the parties or the district court. In *O'Neal, supra,* the court found the locus statute of limitations specifically directed to the locus statutory right, and applied it instead of the shorter Illinois limitation. In *Anderson v. Linton* and *Jackson v. Shuttleworth,* both *supra,* the courts applied the shorter Illinois limitation solely because the longer locus limitation was not part and parcel of a locus statutory right. It could be argued, nonetheless, that a specifically directed statute of limitations of the tort locus jurisdiction should be honored only when it is shorter than the forum's statute. *See* Comment, 1962 U.Ill.L.F. 452 (1962); Restatement (Second) of Conflict of Laws §§ 142, 143 (1971); Restatement of Conflict of Laws §§ 603, 604 (1934); *Kenney v. Trinidad Corporation,* 349 F.2d 832, 839 (5th Cir. 1965); *Zellmer v. Acme Brewing Co.,* 184 F.2d 940, 943 (9th Cir. 1950).

The controlling premise of such an argument would be that statutes of limitations are considered "procedural" because they reflect basically procedural concerns of the forum: discouraging plaintiffs from sleeping on their rights, and limiting the use of the forum's courts to cases in which it is thought that the matters in question are fresh enough to allow a fair rendering of justice. The fact that a foreign jurisdiction has enacted a statutory right with a long specific limitation would, according to this argument, provide no basis for overriding the forum's important interests in the integrity of its judicial system. Where the specific limitation is shorter than that which the forum provides for, it may be said that there remains no right for the forum to enforce, even though the forum would otherwise be willing to enforce one.

The major premises of the contrary argument would be these: where the forum's choice of law rules point to another jurisdiction, that jurisdiction's law governs the substantive rights of the parties; a general statute of limitations of the locus jurisdic-

tion reflects only the locus' procedural concerns for its courts, and need not concern the forum; a specific limitation, on the other hand, goes to the substance of the foreign right and should be applied in the forum.

■ The language emphasized in the quotations *supra* from *Smith v. Toman* and *Jackson v. Shuttleworth* tends to support this latter conceptual approach, but it would be less than candid to say that the analytic problem posed has been definitely resolved in Illinois. Because the approach implicitly adopted by the district court does find support in *Smith, O'Neal,* and *Jackson,* and because Bruno agrees that the district court utilized the proper test, we do not find it necessary to take the matter any further. The statute of limitations in Illinois is, after all a waivable personal privilege. *Massman v. Duffy,* 330 Ill.App. 76, 69 N.E.2d 707 (1946).

We turn to the question of whether the district court properly applied this "specificity" test. In support of its conclusions that the pertinent Yugoslavian statute of limitations is not specifically enough directed to the statutory cause of action to have become part of the substance of the action, the district court advanced three reasons. First, no specific time limitation is included in Section 1 (the provision establishing the civil cause of action). The district court properly placed no substantial reliance on this factor; if the limitation *had* been within Section 1, there would have been no reason to use the "specificity" test which the district court was applying, for the case would have fallen squarely within the rule of *Jackson v. Shuttleworth, supra.* Second, the district court emphasized that Section 20 (providing that civil actions grounded on criminal acts may rely on the limitation applicable to criminal prosecution of such acts) was enacted seven years after Section 1, without any specific reference thereto, and that Section 20 applies broadly to all civil actions based on criminal acts, subject only to the proviso that the conduct complained of in the civil action could subject the civil suit defendant to a criminal prose-

cution. Third, the court noted that Article 134(a) (establishing a perpetual statute of limitations for five specified criminal provisions aimed at genocide and war crimes, one of which is Article 125, criminalizing the conduct complained of here) specifically applies only to criminal prosecutions, and does not in terms extend civil statutes of limitations.

These statements, while accurate, do not lead us to the conclusion reached in the district court. In our opinion Section 20 and Article 134(a), read together, demonstrate a connection between the Yugoslavian limitation provision that is adequately specific to warrant honoring the perpetual limitation in this case.

If adequate specificity exists, it cannot matter that various of the Yugoslavian statutes involved were enacted at different times. *Davis v. Mills, supra,* 194 U.S. at 456, 24 S.Ct. 692. Likewise, the fact that Section 20 must be applied through another statute, Article 134(a), does not weaken Kalmich's claim of specificity. Hypothetically, if Section 20 allowed the use of criminal limitations periods *only* in civil actions based on war crimes under Article 125, it is inconceivable that the reference to Article 134(a) that would be required to see what the criminal limitation was would flaw the otherwise *obviously* specific nature of Section 20.

■■ Of course, as the district court recognized, Section 20, *standing alone,* is not nearly this specific. Even if it were assumed, however, that Section 20 viewed on its own would fail the specificity test, *but see Maki v. George R. Cooke Co.,* 124 F.2d 663, 666 (6th Cir. 1942), *cert. denied,* 316 U.S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758, once Article 134(a) was enacted, the situation

changed. At that time, specified war crimes became different from ordinary crimes, and specifically so, because they were not subject to statutes of limitations in criminal prosecution. Also at that time, causes of action based on the specified crimes became different from other crime-based causes of action, for the same reason. Article 134(a)'s treatment of war crimes for criminal purposes carried into Section 20 by necessary implication.[4] That this effect was not made express in Article 134(a) and results only by reading that statute with Section 20 does not, as has been seen, make the effect any less specific. So far as appears, war crimes referred to in Article 134(a), and only those crimes, were made perpetually punishable, and causes of action based on these crimes, and only such causes of action, were made perpetually actionable. The limitations provisions of Yugoslavia were sufficiently and specifically part and parcel of the substance of the Yugoslavian statutory right, and the district court erred in refusing to apply them.

Nor, as a final matter, do we find any disturbing aspect contrary to Illinois public policy in the fact that litigation is being allowed some thirty years after the events on which the claim for recovery is based. This is true notwithstanding our earlier reference to a policy argument of limitation of the use of the forum's courts to cases in which it is thought that the matters in question are fresh enough to allow a fair rendering of justice. Policy also is involved because of the desirability of discouraging litigants from sleeping on their rights. There would appear to be no aspect of sleeping on rights here and as far as the freshness aspect is concerned, Illinois, as is the case probably in most states, statutorily

---

4. This conclusion is supported by the opinion letter of Kalmich's Yugoslavian law expert. The parties are in controversy over the proper role of this letter in the case. Kalmich argues that the district court was bound by the conclusions of this unsworn, un-cross-examined letter, simply because it was the only expert opinion tendered in the case. Bruno argues that it should not have been offered or considered because it was first offered in support of Kalmich's motion to alter judgment and it would

not be admissible in evidence. Both arguments are plainly wrong under Fed.R.Civ.P. 44.1. As material relevant to the question of law as to foreign law, it was properly offered even at the late date it was offered, and properly considered both in the district court and in this court. As is evident from the text, we take a different view of the relevance of the conclusion that Article 134(a) implicitly extended the Section 20 limitation provision than did the district court.

recognizes circumstances which would permit access to the courts of its state notwithstanding a lapse of time which could be very substantial and which could under some circumstances even exceed that involved in the case before us. Thus, the statute of limitations is tolled in certain circumstances by the absence of the defendant from the state. Ill.Rev.Stat.1975, ch. 83, § 19. Similarly the statute is tolled if the person entitled to bring an action is at the time of the accrual of the cause of action an infant under 18 years of age, is insane or mentally ill or is imprisoned on a criminal charge, the tolling continuing for two years beyond the removal of the disability. Ill.Rev.Stat.1975, ch. 83, § 22.

Our disposition of this case makes it unnecessary to consider Kalmich's argument that Bruno should have been estopped to assert the statute of limitations. Likewise, we see no reason to evaluate Kalmich's argument that Count II of the complaint states an equitable claim not subject to the statute of limitations defense. In the portion of his brief supporting his constructive trust theory, the plaintiff concedes that an action may be maintained in equity only if the remedy at law is inadequate. Our holding here, of course, permits plaintiff to proceed at law subject, as always, to the requirement of proof of all material matters.

For the reasons set forth in this opinion, the judgment of the district court dismissing Kalmich's complaint is reversed and remanded for further proceedings consistent herewith.

REVERSED and REMANDED.

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent. In my opinion the district court correctly analyzed the issues in this case and its judgment should be affirmed.

The lynchpin of the majority's reasoning is that Article 134(a) constituted a specific limitation on the substantive rights created by Section 1. I cannot agree. The statute of limitations for Section 1 remained Section 20, and Section 20, as the district court held, "is a general statute of limitations, not specifically directed to the plaintiff's cause of action . . . .." The majority's analysis might be correct if Section 20 tracked Article 134(a) by stating that the statute of limitations for civil actions was the same as the statute of limitations for criminal actions where the conduct complained of constituted one of the war crimes enumerated in Article 134(a). But Section 20 does not do so. It is applicable to both war crimes and ordinary crimes.

In order to determine what the statute of limitations would be in this case if it were brought in Yugoslavia, it is necessary to look at both Section 20 and Article 134(a). But this fact does not turn Section 20 into a statute specifically directed toward qualifying the substantive rights conferred by Section 1. Section 20 is applicable in Yugoslavia in a broad range of cases that have nothing to do with Section 1 or war crimes. For example, if plaintiff sued defendant in Yugoslavia for damages based on conduct in 1971 which would constitute arson under Yugoslavian law, Section 20 would direct a Yugoslavian court to look to the statute of limitations for the crime of arson. Under the majority's reasoning, an Illinois court should also use the Yugoslavian statute of limitations for arson because the existence of a specified statute of limitations for that crime sets it apart from other crimes. The majority would consequently have the "specificity" exception swallow the general rule.

Therefore, I cannot say that Section 20 is a specific limitation on Section 1 simply because Article 134(a) focuses on war crimes. Since Section 20 is a general statute of limitations, it is inapplicable in this case.