**In re AYRES AVIATION HOLDINGS, INC., Debtor.**

**First National Bank of South Georgia, Plaintiff,**

v.

**Ayres Aviation Holdings, Inc., GATX Capital Corporation, Zlatava Davidova, Trustee of LET, a.s. and General Electric Company, Defendants.**

**Zlatava Davidova, Trustee of LET, A.S., Movant.**

**Bankruptcy No. 00–11881.
Adversary No. 01–1003.**

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Nov. 4, 2002.

Ward Stone, Jr., Mark S. Watson, Stone & Baxter, LLP, Macon, GA, for defendants.

John T. McGoldrick, Jr., Michael N. White, Martin, Snow, Grant & Napier, Macon, GA, for plaintiff.

### MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On October 11, 2002, the court held a hearing regarding the Motion of Zlatava Davidova, Trustee of LET, a.s. to Reconsider the Court's Memorandum Opinion and Order dated August 21, 2002. At the conclusion of the hearing, the court took the matter under advisement. After considering the evidence presented at the August 7, 2002 trial, the parties' briefs, stipulations and oral arguments, as well as applicable statutory and case law, the court makes the following findings of fact and conclusions of law.

### Procedural History

On November 27, 2000, Ayres Aviation Holdings, Inc., Ayres Corporation, and the Fred Ayres Company filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code ("Code"). These cases have been administratively consolidated. On February 8, 2001, First National Bank of South Georgia ("Plaintiff") filed this adversary proceeding in the Ayres Aviation Holdings, Inc. ("Debtor") case. Plaintiff requested a determination of the validity, priority, and extent of liens and competing interests in two General Electric aircraft engines, serial no. GE–E–685998 ("998 engine") and serial no. GE–E–685002 ("002 engine").

Only Debtor, Zlatava Davidova, Trustee of LET, a.s. ("Movant") and GATX Capital Corporation ("GATX") were named as defendants in the original complaint.[1] Gen-

---

Jesse C. Stone, Merrill & Stone, Swainsboro, GA, Erich N. Durlacher, Atlanta, GA, Stephen G. Gunby, Columbus, GA,

---

1. The court notes that John Flanders Kenne- dy, the appointed Chapter 11 trustee in this

eral Electric Company ("General Electric") was later added as a defendant. In its answer, Debtor asserted cross-claims and counterclaims and requested a determination of the validity, priority, and extent of liens and competing interests in a L610 G aircraft, serial no. 970301 ("L610–301 aircraft"), in addition to the two General Electric engines. Debtor also sought the determination of its avoidability of these interests and authority as trustee to dispose of these assets. In response to Debtor's cross-claim, GATX sought, among other things, relief from the automatic stay.

On May 17, 2002, the court held a Final Pre–Trial Conference in this adversary proceeding. At the hearing, the court approved and adopted the pre-trial order submitted by the parties. The parties raised the issue of which law should govern the validity, priority, and extent of liens in the subject property. After considering the parties' briefs on this issue, the court found that the law of the Czech Republic was controlling as to this issue. Because GATX admitted that it did not have a perfected security interest under Czech Republic law, the court granted the parties' motion to strike the responsive pleadings of GATX.

On August 7, 2002, the court conducted a trial on Plaintiff's complaint to determine the validity, priority, and extent of liens or competing interests in the L610–301 aircraft and the two General Electric engines. On August 21, 2002, the court issued its Memorandum Opinion and accompanying order regarding these issues. After stating that the Movant did not meet her burden to prove substantive Czech Republic law on the issues before the court, the court held: 1) General Electric was the title owner of the 998 engine, free and

clear of any encumbrances from Debtor, GATX, Movant, and Plaintiff; 2) The Bill of Sale between LET, a.s. and Debtor transferred ownership in the 002 engine to Debtor and Plaintiff had a valid perfected security interest in the 002 engine; 3) The Bill of Sale also transferred ownership of the L610–301 aircraft to Debtor, thus it was part of Debtor's bankruptcy estate; 4) GATX's Motion for Relief from the Stay was denied.

## FINDINGS OF FACT

Many of the pertinent facts are not disputed. Debtor is a corporation organized under the laws of the State of Florida. Fred P. Ayres is the sole shareholder of the Debtor corporation. Formed in 1991, LET, a.s. ("LET") is a legal entity organized under the laws of the Czech Republic. Both LET and Debtor were in the business of manufacturing aircraft. LET manufactured the type L610 G aircraft.

In 1997, LET and General Electric entered into a contract ("LET/GE Contract") whereby General Electric would supply and sell CT7–9 engines to LET which would, among other things, manufacture L610 G aircraft. (*See* General Electric's Ex. 1). The LET/GE Contract was to be effective during the Development Phase, which included the time until the L610 G aircraft with the CT7–9 engine was certified by the United States Federal Aviation Administration ("FAA"). (*See id.*, art. 1, para. G). Specifically, the LET/GE Contract provided that General Electric would supply LET with two CT7–9 engines during the development phase. These "Engines will be bailed (loaned at no charge) for the duration of the LET L610G Development Program, as per terms of Exhibit D, Bailment Agreement, herein." (*Id.*, Ex.

case, is the actual party in interest for Debtor. LET, a.s. is a Czech Republic entity involved in a liquidation proceeding in the Czech Re-

public. Likewise, Zlatava Davidova, the trustee for LET, a.s. in its liquidation proceeding, is the actual party in interest for LET.

C, para. C.4). LET and General Electric entered into the above referenced Bailment Agreement on June 3, 1997. (*See id.*, Ex. D). The Bailment Agreement defines "Bailed Property" as property General Electric provided pursuant to Exhibit C. (*Id.*, cl. 1).

LET manufactured the L610–301 aircraft in the same year. Installed in this aircraft were two General Electric Model HE CT7–9D engines, the 998 and 002 engines. The L610–301 aircraft and the two General Electric engines are the property at issue in this adversary proceeding. General Electric does not dispute that LET purchased the 002 engine from General Electric for a purchase price of $750,400.00. (*See* Pre–Trial Order, Ex. "A", para. 7; *see also* Pl.'s Exs. 11 & 12). Accordingly, General Electric claims no interest in the 002 engine.

On May 13, 1997, this aircraft was registered with the Civil Aviation Authority Register of the Czech Republic ("Czech Aircraft Register"), Register No. 4770, with LET designated as its owner. (*See* LET Ex. 1).[2] Also, the Civil Aviation Authority issued the L610–301 aircraft a Special Certificate of Airworthiness, No. Z01Z–4770/4, in the experimental aircraft category. (*See id.*).

On or about August 11, 1998, Debtor acquired approximately 93% of the outstanding shares of stock of LET. The management structure of LET after Debtor's acquisition consisted of a Board of Directors and two Procurators. (*See* Pl.'s Ex. 13). Mr. Ayres held the position of Chairman of the Board of Directors and also served as one of the two Procurators. While Mr. Ayres made most of the decisions for LET, Mr. Ayres testified that he never attended any of the meetings held by the Board of Directors.

Based on the "Companies Register maintained by the Regional Court in Brno.," ("Register") at least two directors are required to act for or on behalf of LET. (*See id.*). As to the authority of the Procurators, the Register provides:

> Each Procurator is authorised [sic] to act for and on behalf of the Company severally within the scope of the Procuration granted. Each of the Procurators is authorised [sic] to perform legal acts in writing for and on behalf of the Company LET, a.s., severally by attaching his signature and the word "Procurator" to the written or printed style of LET, a.s.

(*Id.*).

On May 19, 2000, Mr. Ayres, on behalf of "LET Aeronautical Works,"[3] executed a Bill of Sale, Assignment and Conveyance ("Bill of Sale"). (*See* Pl.'s Ex. 1). Mr. Ayres signed the Bill of Sale as "Chairman." (*See id.*). The Bill of Sale purported to memorialize a sale of the L610–301 aircraft with the attached 998 and 002 engines from LET to Debtor. As consideration for this purchase, Mr. Ayres testified that Debtor and Ayres Corporation, Debtor's affiliate, transferred avionics and cash to LET in 1999 and 2000.

Also on May 19, 2000, Mr. Ayres, on behalf of Debtor, entered into a loan agreement with Plaintiff in which Plaintiff loaned $200,000.00 to Debtor. (*See* Pl.'s Exs. 2 & 5). In exchange for these funds, Debtor executed a document purporting to grant Plaintiff a security interest in the 002 and 998 engines. (*See* Pl.'s Ex. 6). On May 22, 2000, Plaintiff filed a UCC–1

**2.** At trial, however, Mr. Ayres testified that the registration with the Civil Aviation Authority of the Czech Republic "has nothing to do with ownership."

**3.** Mr. Ayres testified that LET, a.s. and LET Aeronautical Works were the same company.

financing statement in the Superior Court of Dougherty County. (*See* Pl.'s Ex. 10). On July 17, 2000, Plaintiff recorded its security interest in the two engines with the FAA. (*See* Pl.'s Ex. 8). Debtor and Plaintiff have stipulated that as of the date of the trial, the principal amount by which Debtor is indebted to Plaintiff is $200,125.00 plus $45,261.60 in interest which continues to accrue contractually at $63.92 per day.

On or about August 30, 2000, liquidation proceedings were initiated against LET under the laws of the Czech Republic. Movant is the trustee of the estate of LET. As stated above Debtor filed bankruptcy on November 27, 2000 and this adversary proceeding was filed on February 8, 2001.

The trial of this adversary proceeding was held on August 7, 2002. On the morning of the trial, Movant filed with the court and hand delivered to all parties a letter by Thomáš Richter, a Czech Republic attorney. The letter contained both English translations of relevant sections of Czech Republic law and Mr. Richter's opinions on those provisions. However, Movant never tendered the opinion letter as evidence nor did Movant object when Plaintiff asserted that the court could not consider the letter. Movant did submit a post-trial brief in support of her argument that the court should consider Mr. Richter's letter pursuant to Federal Rule of Civil Procedure 44.1 ("Rule 44.1"), despite the fact that the letter was not offered as evidence at trial. As explained in the August 21, 2002 Memorandum Opinion, the court did not consider the pre-trial opinion letter in rendering its decision as to the validity, priority, and extent of liens and competing interests in the L610–301 aircraft and the two General Electric engines.

Movant has asked the court to reconsider its August 21, 2002 Memorandum Opinion and Order pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). Movant contends the court was incorrect when it reasoned that she did not met her burden on proving substantive Czech Republic law and held that the Bill of Sale between Debtor and LET was valid and effective.

Movant urges that under Rule 44.1, the court may consider any relevant source of foreign law whether or not submitted by a party or admissible as evidence. Therefore, the court should have considered both the pre-trial opinion letter and the post-trial brief submitted by Movant. Additionally, there is no requirement that the documents be submitted as evidence at trial.

Further, the fact that the pre-trial opinion letter was authored by Movant's co-counsel does not prevent the court from considering it. When opposing counsel argues only about the probative weight of an opinion letter rather than submitting a contradicting opinion letter, he does so at his own risk. Once the court considers the substantive Czech Republic law, it should hold that the Bill of Sale was ineffective.

Plaintiff contends that the pre-trial opinion letter had to be tendered as evidence or the court cannot consider it. Rule 44.1 relaxes the rules for proof of foreign law but it does not eliminate the requirement that an opinion letter regarding foreign law must be tendered as evidence. A party can insist on consideration of proof only to the extent that evidence was given to the court during trial.

The court can conduct its own research but it is not required to do so. Accordingly, the court can consider the English translations of Czech Republic law but it cannot and should not consider the opinions expressed by Movant's co-counsel, who prepared the pre-trial opinion letter. The cases cited by Movant do not require a different outcome than the one already reached by this court. The Motion to

Reconsider does not allow Movant to submit the pre-trial opinion letter as evidence for the court to consider.

Further, at trial Movant never objected to the court's not considering the pre-trial opinion letter, asked the court to consider it, or asked the court to reopen evidence. Thus, Movant waived any right to object to the court's failure to consider the pre-trial opinion letter.

Finally, even if the court does consider the pre-trial opinion letter and the later filed documents,[4] they are inadequate to prove Czech Republic law. Only the portions of Czech Republic law deemed to be relevant by Movant have been submitted. If there are areas of foreign law not proven by the party bearing the burden, the court should assume there is no substantive difference from United States ("U.S.") law. The translated sections offer no basis under which the court can rule that the Czech Civil Aviation Act invalidates a good faith purchaser for value simply because it was not registered with the appropriate Czech Republic aviation authority. Nor do the provisions deal with the 002 engine that is also subject to this adversary proceeding.

Mr. Kennedy, as Trustee of Debtor, argues that the transfer of the L610–301 aircraft satisfies both U.S. and Czech Republic law. The use of "LET Aeronautical Works" in the Bill of Sale does not invalidate the transfer, nor does the absence of the price term make the Bill of Sale defective. Movant's argument that the transaction is avoidable under the Czech Bankruptcy and Composition Act is unfounded. Therefore, the court was correct in its Memorandum Opinion and Order dated August 21, 2002 and Movant's Motion for Reconsideration should be denied.

### CONCLUSIONS OF LAW

■ Pursuant to Rule 59(e), applicable to Bankruptcy proceedings under Federal Bankruptcy Rule 9023 ("Bankr. Rule 9023"), this court has been asked to reconsider its Memorandum Opinion and Order dated August 21, 2002. (Fed. Bankr.R. 9023). A court is given great latitude in deciding whether to reconsider its own opinion. *See Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health and Rehabilitative Services*, 225 F.3d 1208, 1216 (11th Cir.2000) (standard of review for the Court of Appeals regarding the disposition of a motion for reconsideration is abuse of discretion).

■ In deciding whether to alter or amend a judgment, courts look at four factors: "1) whether the judgment was based upon a manifest error of fact or law; 2) whether the movant presents newly discovered or previously unavailable evidence; 3) whether the amendment is necessary to prevent manifest injustice; and 4) whether an intervening change in controlling law has occurred." *Clancy v. Employers Health Insurance Company*, 101 F.Supp.2d 463, 464 (E.D.La.2000). The issue before this court involves a multi-million dollar aircraft and two engines, each worth hundreds of thousands of dollars. There is no question that there would be "manifest injustice" if this court came to the wrong legal conclusion as to which entity owned the L610–301 aircraft and the two General Electric engines.

---

4. In addition to her post-trial brief, Movant submitted in support of her Motion to Reconsider an additional document with an opinion letter from Peter Zeman, a disinterested Czech Republic attorney, which contained additional Czech Republic law translations and Mr. Zeman's legal opinion, and certified English translations of eight Czech Republic law provisions.

### I. Rule 44.1

 Under controlling Eleventh Circuit law, "[w]hen analyzing foreign law, the district court may consider any relevant material or source, including testimony, *whether or not submitted by a party* or admissible under the Federal Rules of Evidence." *Trinidad Foundry and Fabricating, Ltd. v. M/V K.A.S. Camilla,* 966 F.2d 613, 615 (11th Cir.1992)(emphasis added). The court in *Kalmich v. Bruno,* 553 F.2d 549 (7th Cir.1977), considered an inadmissible opinion letter that was not offered until the motion to alter judgment was filed with the court. *Kalmich,* 553 F.2d at 555. While not controlling over this court, the *Kalmich* case is further support for the argument that Rule 44.1, applicable to Bankruptcy proceedings under Federal Bankruptcy Rule 9017 ("Bankr. Rule 9017"), gives courts wide discretion to consider any relevant material when determining an issue of foreign law.

The cases cited by Plaintiff are not persuasive as to the issue of Rule 44.1 and proving foreign law. The court in *Bernard v. Gulf Oil Corporation,* 841 F.2d 547 (5th Cir.1988), was dealing with the U.S. Civil Rights Act of 1964. *Bernard,* 841 F.2d at 549. Therefore, Rule 44.1 regarding proving foreign law was not applicable. Another case cited by Plaintiff deals with Rule 44.1 only in a footnote and does not hold that proof of foreign law must be submitted as evidence before the court can consider it. *See Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986).

 This court held that Czech Republic law was controlling as to the issue before it. Upon reconsideration, the court will consider all relevant sources of Czech Republic law submitted by the parties. Therefore, the court finds that it can and should consider Mr. Richter's letter, Mr. Zeman's letter, and the certified English translations of relevant Czech Republic law submitted to the court by Movant. Additionally, the court will consider the information submitted by Mr. Kennedy regarding the Czech Republic Commercial Code and Bankruptcy & Composition Act. However, the court will afford little weight to the information on Czech Republic law submitted by Mr. Kennedy given that its authority and accuracy were not shown.

### II. L610–301 Aircraft

In sum, Movant submitted eight sections of relevant Czech Republic law: 1) Three sections from the Czech Civil Aviation Act 49/1997, sections 4, 5(a) and 5(b); 2) Three sections from the Czech Bankruptcy and Composition Act 329/1991, sections 14, 15 and 28(1); 3) Two sections from the Czech Commercial Code 513/1991, sections 409 and 448. (*See* Doc. 66).

#### A. Czech Civil Aviation Act

 Section 4 explains the Czech Aircraft Register and lists required information to place an aircraft on the Czech Aircraft Register. (*See* Doc. 66). This section has little relevance to the issue before the court except for (2)(e). This sub-section requires a description of any security interests, called a charge in the English translation, "over the aircraft and its parts, as well as spare parts to the aircraft and its parts." (*See id.*). The court points to this section only to show that Czech Republic law does distinguish between the aircraft and its parts. Therefore, the court will not assume the use of the word "aircraft" in a Czech Republic statute necessarily includes the aircraft's parts or more specifically the aircraft's engines. Further, nothing in this section invalidates a transfer of ownership in an aircraft or its parts for any reason.

Section 5(a) is irrelevant because the statute only refers to the registration of a security interest over an aircraft, not its

parts. (*See id.*). While there is a dispute as to Plaintiff's security interest in the 002 engine, no party is claiming a security interest in the L610–301 aircraft. Only the ownership of the L610–301 aircraft is disputed.

Section 5(b) is by far the most relevant section. Specifically, the English translation for 5(b)(1) states "The transfer of ownership title to, and charge over, an aircraft shall take effect upon the registration thereof in the aircraft register." (*See id.*). It is undisputed that the transfer of ownership of the L610–301 aircraft from LET to Debtor was never registered on the Czech Aircraft Register.

■ It is hard to believe that an aircraft must be registered in the Czech Republic to effectuate the transfer of ownership when the aircraft is presumptively being moved to the U.S., as it was purchased by Debtor, a U.S. corporation. It is unclear to the court what interest the Czech Republic would have in such an aircraft once ownership is purportedly transferred to a foreign corporation seeking to operate the aircraft in another country. However, Section 5(b)(1) of the Czech Civil Aviation Act is clear on its face. The transfer of ownership of an aircraft takes effect upon the transfer being registered on the Czech Aircraft Register. (*See id.*). Additionally, both Mr. Richter's and Mr. Zeman's opinions are consistent with this conclusion. (*See id.*). Without contrary authority from the adverse parties, the court cannot find that the Bill of Sale is effective as to the L610–301 aircraft.

### B. Czech Bankruptcy & Composition Act and Czech Commercial Code

Without Section 5(b)(1) of the Czech Civil Aviation Act, Movant's argument would not have been successful. The other Czech Republic law provisions submitted to the court are not helpful to her argument.

Section 14(f) of the Czech Bankruptcy and Composition Act is inapplicable to the issue before the court. (*See* Doc. 66). This section refers to transactions that take place during the two months prior to the entity filing for bankruptcy protection. (*See id.*). LET entered bankruptcy in the Czech Republic on August 30, 2000, three and a half months after the Bill of Sale for the L620–301 aircraft and the two General Electric engines.

Section 15 of the Czech Bankruptcy and Composition Act invalidates certain types of transfers that occur during the six months immediately prior to a bankruptcy filing. (*See id.*). While this disputed transaction took place during that time frame, it does not fit under any of the six categories of avoidable transactions in 15(1)(a-f). Even if the transaction were to fit into one of these avoidable transaction categories, Movant has not pursued such an action in the Czech Republic. Nor has she proved the elements of such an avoidable transaction to this court.

■ Further, if foreign law is not sufficiently proven by the party carrying the burden, then the court is to apply forum law. *See Riffe v. Magushi*, 859 F.Supp. 220, 223 (S.D.W.Va.1994). Since Movant did not establish the applicable Czech Republic statute of limitations for such an action, the court must apply forum law. Therefore, pursuant to the Code, it is assumed that it is too late for Movant to pursue one of these actions. *See* 11 U.S.C. § 546(a).

Section 28(1) of the Czech Bankruptcy and Composition Act does not seem applicable to the issue before the court. (*See* Doc. 66).

Section 409 of the Czech Commercial Code requires that contracts for the sale of

good requires a price term unless "it follows from the negotiations of the purchase contract that the parties intended to conclude the purchase contract without specifying the price." (*See id.*). The Bill of Sale does not include a price term. (*See* Pl.'s Ex. 1). However, from the terms of the Bill of Sale, "The Seller, in return for valuable consideration, the receipt and sufficiency of which is hereby acknowledged . . .," it is clear that not only was the price term agreed upon for the aircraft, LET stipulated to the sufficiency and receipt of the price when Mr. Ayres signed on behalf of LET. (*Id.*)

Section 448 of the Czech Commercial Code spells out how to determine the price term if one was not set in the contract and if the parties had agreed to leave the price term open. (*See* Doc. 66). Since the court finds that the price term was agreed upon, this code section is inapplicable to the issue before the court.

### III. 998 Engine

■ The court will not change its conclusion that the 998 engine is the property of General Electric. The submitted relevant material on Czech Republic law does not alter the court's reasoning that the 998 engine was subject to the bailment agreement between General Electric and LET. Therefore, as stated in the August 21, 2002 Memorandum Opinion and Order, LET did not own the 998 engine.

### IV. 002 Engine

■ The Bill of Sale purported to transfer ownership of the L610–301 aircraft, the 998 engine, and the 002 engine from LET to Debtor as separate items. (*See* Pl.'s Ex. 1). Unlike the requirement that transfers of aircraft ownership be recorded on the Czech Aircraft Register to be effective, there was no such law pre-

sented to the court that requires the same for aircraft parts or specifically aircraft engines. Movant did not provide to the court any substantive Czech Republic law or interpretations of the Czech Civil Aviation Act which establish that the transfer of ownership of an aircraft engine must be registered on the Czech Aircraft Register to be effective. Section 4 of the Czech Civil Aviation makes the distinction between an aircraft and its parts. (*See* Doc. 66). Further, Section 5(b) only requires transfers of aircraft ownership be registered on the Czech Aircraft Register. This section does not mention transfers of ownership in aircraft parts. Thus, the court concludes that Czech Republic law does not require transfers of ownership in aircraft engines to be recorded on the Czech Aircraft Register for the transfer to be effective.

### *Conclusion*

Based on the foregoing, the court finds that the Bill of Sale is invalid as to the L610–301 aircraft and the 998 engine. However, the Bill of Sale is valid as to the 002 engine. Therefore, the court concludes the following:

1) The Bill of Sale between LET and Debtor did not transfer ownership in the L610–301 aircraft to Debtor. The aircraft is not part of Debtor's bankruptcy estate but belongs to Movant;

2) General Electric is the title owner of the 998 engine, free and clear of any claims or encumbrances of Debtor, Movant, GATX, and Plaintiff;

3) The Bill of Sale between LET and Debtor did transfer ownership in the 002 engine to Debtor. Debtor's pledge of the 002 engine to Plaintiff as collateral is valid. Plaintiff has a valid perfected security in-

terest in the 002 engine. *See generally* 49 U.S.C. § 44107; O.C.G.A. § 11–9–310 (2002); and

4) The motion of GATX for relief from stay is denied.

An order in accordance with this Memorandum Opinion will be entered.